UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL |
| | : | NO. 3:05CR195(MRK) |
| v. | : | |
| | : | |
| EDUARDO CASIANO and | : | |
| JOSE SANTIAGO VERA, | : | |
| | : | |
| Defendants. | : | |

**RULING AND ORDER**

Currently pending before the Court is a Eduardo Casiano's and Jose Santiago Vera's Joint

Motion for In Camera Inquiry of Juror [doc. # 1146] ("Joint Motion"), which the Government

opposes [doc. # 1149]. For the reasons set forth below, the Court DENIES the Joint Motion.

This case was tried to a jury beginning on October 12, 2006. On October 27, 2006, a jury

returned a verdict of guilty against Messrs. Casiano and Vera on all counts that proceeded to trial.

Mr. Casiano was found guilty of the following counts: Count One, conspiracy to possess with the

intent to distribute and to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§

841(a)(1), 841(b)(1)(A), and 846; Count Three, conspiracy to possess with the intent to distribute

and to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B),

and 846; Count Four, possession with the intent to distribute 100 grams or more of heroin, in

violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and Count Five, possession with the intent to

distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Mr. Vera was found

guilty of the following: Count One, conspiracy to distribute 100 grams or more of heroin, in violation

of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846; and Count Four, possession with the intent to

distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). At the request of both Defendants, the Court polled the jury individually and each juror stated their assent to the verdict as read. Upon the rendering their verdict, the jury was discharged.

Mr. Vera appeared for his sentencing on March 21, 2007. Prior to that date, Juror # 2 had contacted the Clerk's Office to determine the Defendants' sentencing dates, and Juror # 2 attended Mr. Vera's sentencing on March 21. As the Court recited during the sentencing, Mr. Vera's Pre-Sentence Report ("PSR") concluded that Mr. Vera was in Criminal History Category V and had an adjusted total offense level of 32, giving him a recommended Guidelines incarceration range of 188-235 months. After entertaining arguments regarding various adjustments in Mr. Vera's Guidelines range, the Court ruled that Mr. Vera should be in Criminal History Category IV, not V, that his adjusted total offense level should be 30, not 32, and that as a consequence, he had a recommended Sentencing Guidelines' range of 135-168 months. The Court also recited at sentencing that Mr. Vera was subject to a mandatory statutory minimum of 120 months, which is the sentence that Mr. Vera advocated.

The Government presented the testimony of two witnesses at the March 21 sentencing in support of its contention that Mr. Vera should be sentenced within the Guidelines range. One witness accused Mr. Vera of having shot him during an altercation outside a bar. Another witness testified that Mr. Casiano had paid the witness and Mr. Vera several thousand dollars to kill another individual and that Mr. Casiano had supplied the witness and Mr. Vera with the firearms to commit the crime. Following the receipt of this testimony, the Court adjourned the sentencing, at Mr. Vera's request, to give him additional time to discuss sentencing issues and the PSR with his counsel. Sentencing resumed on April 9, 2007, at which time the Court determined that a Guidelines sentence

was appropriate and imposed a sentence of imprisonment of 160 months. On April 18, 2007, Mr. Vera filed a notice of appeal as to his conviction and sentence. Mr. Casiano has not yet been sentenced.

What prompts the present motion is that on March 30, 2007, Juror # 2 sent the Court a letter, which out of an abundance of caution (but now with some regret) the Court shared with counsel for Messrs. Vera and Casiano and marked as Court Exhibit 1 on April 9, 2007. In its entirety, the letter reads as follows:

> Had I been a jury of one, after the conclusion of the evidence, Mr. Vera would have been not guilty and Mr. Casiano would have been guilty of conspiracy to distribute and/or sell under 500 grams of heroin. During deliberations, after discussion of the instructions, unanimous verdicts were reached.

> I went to the sentencing of Jose Vera, truly, just hoping to see what everyone else saw and learn how long he would be imprisoned. I assumed it would be a fairly routine procedure. I still don't understand what happened. Now Mr. Vera is . . . a hit man for Eddie Casiano. How do we know this? Because yet another Spanish speaking convicted felon told us so. And if that isn't enough, Mr. Vera is also a psychopath who tr[ies] to kill innocent pipe fitters for no reason. How do we know this? Because the innocent pipe fitter told us so. Do the above represent "aggravating factors"? Do you have to prove anything in federal court?

> If Mr. Vera is going to prison for '135-168' for his conviction, I can only assume that Mr. Casiano is going away for life. Nozariel Gonsalez, by his own admission, dealt 300 grams of heroin every three to four days. Because of his plea agreement, if I remember correctly, he'll be out in five to six years.

> You told the jury not to be concerned with sentencing. I couldn't do that. To me, the two phases are inseparable. If the government exacts the highest penalties, it has the obligation to exact the highest burden of proof. That did not happen in this case.

> A great deal of time, human resources and financial resources were expended in prosecuting Mr. Casiano and Mr. Vera. I hope that on every level it was worth it. I won't be attending future proceedings in this matter.

Court Ex. 1 (April 9, 2007).

In their Joint Motion, Messrs. Casiano and Vera ask this Court to conduct an *in camera* inquiry of Juror # 2. The Joint Motion expresses significant concern about "(a) the juror's initial statement as to what outcome an independent assessment of the evidence may have yielded; (b) the reference to attending the March 21 hearing to, *inter alia*, 'see what everyone else saw'; and (c) the concluding suggestion that the government may have failed to meet its burden of proof." Joint Motion [doc. # 1146] at 2. According to Defendants, the "tone and tenor [of Juror # 2's statements] call the validity of the verdict into question. Collectively, they, at a minimum, warrant additional inquiry." *Id.*[1]

The Court has no doubt that when faced with circumstances warranting an investigation into juror conduct, the Court has not only the power, but sometimes the obligation, to make inquiry of jurors. *See United States v. Moten*, 582 F.2d 654, 665-66 (2d Cir. 1978) (collecting cases). The difficulty with Defendants' position in this case, however, is that Juror # 2's letter does not present circumstances that warrant further investigation.

The Second Circuit has emphasized that "there is no question that a federal court's review into jury deliberations, even a criminal jury's deliberations[,] is a decidedly limited enterprise." *Anderson v. Miller*, 346 F.3d 315, 327 (2d Cir. 2003). The reason for this is that "the sanctity of the jury room is among the basic tenets of ours system of justice [and i]nquiries into the thought processes underlying a verdict have long been viewed as dangerous intrusions into the deliberative

---

[1] In its opposition, the Government states that the Court lacks jurisdiction over Mr. Vera's case because of his appeal. *See, e.g.*, *United States v. Camacho*, 302 F.3d 35, 36 (2d Cir. 2002). Mr. Vera responds that an *in camera* interview of the juror could provide an "avenue for relief" under Rule 33 of the *Federal Rules of Criminal Procedure* and that a defendant can move for a new trial during the pendency of an appeal. *See United States v. Chronic*, 466 U.S. 648, 667 n.2 (1984). The Court need not decide who is correct in this regard since the identical issue is presented to the Court by Mr. Casiano, who has not yet been sentenced, let alone taken an appeal.

process.  They undermine the finality of verdicts and invite fraud and abuse." *Attridge v. Cencorp Div. of Dover Techs., Int'l*, 836 F.2d 113, 114 (2d Cir. 1987).  As the Supreme Court warned long ago:

> [L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding.  Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict.  If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.

*McDonald v. Pless*, 238 U.S. 264, 267-68 (1915).

Reflecting the limited grounds for inquiry into the validity of a verdict, *Federal Rule of Evidence* 606(b) provides as follows:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.  But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict upon the verdict form.  A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Fed. R. Evid. 606(b).[2]  The Second Circuit has observed that Rule 606(b) "serves three principle purposes: to promote free and uninhibited discourse during deliberations, to protect from attempts to influence them after trial, and to preserve the finality of verdicts."  *Attridge*, 836 F.2d at 116.

Juror #2's letter does not refer to, or even remotely suggest that, any "extraneous prejudicial information was improperly brought to the jury's attention" or that any "outside influence was improperly brought to bear upon any juror."  *See* Fed. R. Evid. 606(b)(1), (2).  Nor does it suggest that the verdict entered on the verdict form was anything other than the verdict reached, or that there was any jury misconduct of any kind.  At best, the letter suggests that Juror # 2 may have concerns about the sentencing process and the length of sentences that Mr. Vera and Mr. Casiano now face.  As a result, the juror may now have misgivings about her own verdict or the wisdom of our criminal justice system.  Even if true, however, that would not be a proper grounds for disturbing the verdict or even pursuing any inquiry of the juror regarding her views.  As the Advisory Committee Notes correctly explain, "The mental operations and emotional reactions of jurors in arriving at a given result would, if allowed as a subject of inquiry, place every verdict at the mercy of jurors and invite tampering and harassment."  Fed.R. Evid. 606(b), 1972 Advisory Comm. Note to Subsection (b).[3]

---

[2]  Recently, Rule 606(b) was amended to permit juror testimony to prove that the verdict reported was the result of a mistake in entering the verdict on the verdict form.  However, the drafters rejected a broader exception that would have allowed the use of juror testimony to prove that the jurors were operating under a misunderstanding about the consequences of the result they had reached.  "The broader exception [was] rejected because an inquiry into whether the jury misunderstood or misapplied an instruction goes to the jurors' mental processes underlying the verdict, rather than the verdict's accuracy in capturing what the jurors had agreed upon."  Fed. R. Evid. 606, Advisory Comm. Note to 2006 Amendments.

[3]  In their Reply, Defendants state that the concerns expressed by Juror #2 are "not dissimilar to the concerns expressed and inquiries made of a Spanish-speaking juror during trial."  Reply [doc. # 1153] at 3.  The author's use of a double negative may reflect his own hesitation in making such an outlandish suggestion.  The concerns expressed and inquiries made of the Spanish-speaking juror

In short, there are no circumstances suggested by Juror # 2's letter that would permit any legitimate inquiry of any juror under Rule 606(b) or relevant case law. *See United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) ("This court has consistently refused to allow a defendant to investigate jurors merely to conduct a fishing expedition") (internal quotation marks omitted). Indeed, given the content of Juror # 2's letter, it is apparent that the letter itself may not even be received by this Court for purposes of challenging or questioning the validity of the verdict in any way. *See* Fed. R. Evid. 606(b); *Jacobson v. Henderson*, 765 F.2d 12, 14 (2d Cir. 1985) ("affidavits and statements by jurors may not ordinarily be used to impeach a verdict once the jury has been discharged unless extraneous influence has invaded the jury room.").

Accordingly, Defendants' Joint Motion [doc. # 1146] is DENIED.

IT IS SO ORDERED,

/s/      Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **June 7, 2007**.

---

were before the verdict, had nothing to do with the jury's verdict or deliberations, and instead were designed to address a concern about extraneous influences–that is, the juror's unwillingness to follow the Spanish translation provided by the official court interpreter, which all of the other jurors indicated they would follow. To analogize that pre-deliberation situation to a post-verdict inquiry into Juror # 2's letter is to allow a desire for rhetoric to overrule reason and good judgment.